# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| ONTARTIO D. FONDREN,<br><br>          Plaintiff,<br>v.<br><br>JAY VAN LANEN and SUSAN PETERS,<br><br>          Defendants. | Case No. 18-CV-1174-JPS<br><br>**ORDER** |

## 1. INTRODUCTION

Plaintiff Ontario Fondren ("Fondren"), a prisoner proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983 alleging that his civil rights were violated. Specifically, Fondren alleges that Defendant Jay Van Lanen ("Van Lanen"), an officer at Green Bay Correctional Institution ("GBCI"), wantonly ignored a long-standing medical restriction requiring him to be handcuffed in front of his body, causing him pain and exacerbating his previous shoulder injury. He also alleges that Defendant Susan Peters ("Peters"), a nurse at GBCI, subsequently removed Fondren's cuffing restriction without medical reason and failed to provide adequate medical treatment for his newly exacerbated shoulder injury. The Court permitted Fondren to proceed on Eighth Amendment claims against Van Lanen and Peters for deliberate indifference to his serious medical need.

Van Lanen and Peters have each filed a motion for summary judgment, (Docket #54 and #60), and those motions are fully briefed and ripe for adjudication. For the reasons explained below, Van Lanen's motion

will be denied and Peters' motion will be granted in part and denied in part. This case will proceed to trial.

**2.    STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56 provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). The court must not weigh the evidence presented or determine credibility of witnesses; the Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010). The party opposing summary judgment "need not match the movant witness for witness, nor persuade the court that [his] case is convincing, [he] need only come forward with appropriate evidence demonstrating that there is a pending dispute of material fact." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994).

**3.    RELEVANT FACTS**

During all times relevant to this suit, Fondren was incarcerated at GBCI. Fondren injured his left shoulder in May 2010. He had shoulder surgery in February 2014, and in July 2014 he was diagnosed with chronic left ulnar sensory nerve mononeuropathy. In December 2014, Fondren underwent a successful Guyon canal release surgery. As a result of his

surgeries, Fondren's mobility in his left arm was limited. So, on March 10, 2015, a member of the health services unit ("HSU") at GBCI placed Fondren on a "cuff in front" restriction that required him to be restrained with his hands in front of his body.

Fondren continued to suffer from left shoulder stiffness, and he underwent shoulder manipulation procedures in October 2016 and July 2017. After the July procedure, the treating doctor ordered physical therapy but did not place any restrictions on Fondren's use of his left arm. Fondren underwent physical therapy throughout 2016 and 2017. In August 2017, Fondren refused to do any further physical therapy for his left shoulder, despite recommendations to continue. In September 2017, Fondren refused his follow-up orthopedic appointments for his left shoulder.

In November 2017, Fondren was in the restrictive housing unit ("RHU") because he had thrown a typewriter during an altercation with an officer. On November 21 at about 11:25 a.m., Van Lanen was notified by a sergeant in the RHU that Fondren had thrown cups of Ensure protein drink on two correctional officers during afternoon medication pass. Van Lanen was also told that the officers heard verbal threats that they believed came from Fondren, but those threats may have come from another inmate.[1]

After being informed of the incident, Van Lanen went to Fondren's cell with four other officers. Van Lanen told Fondren he needed to submit to a strip search, and Fondren complied. After the strip search, Van Lanen decided to put Fondren into control placement, which would mean

---

[1] In later disciplinary proceedings, Fondren admitted he knocked over cups of Ensure but said he did not intend for the contents to get on the officers. At a conduct report hearing, the hearing officer believed Fondren was probably telling the truth, and therefore found him guilty only of disruptive conduct, not assaulting employees. Fondren was also found guilty of threatening an officer.

escorting him to another cell. It is general practice at GBCI to restrain inmates behind the back for safety and security reasons, particularly if the inmate has assaulted staff members. Van Lanen claims that based on the information he received about Fondren having assaulted staff and having made verbal threats to their safety, he determined that Fondren needed to be restrained in the back for the safety and security of staff members. Van Lanen was aware of Fondren's "cuff in front" medical restriction, but he says that he believed following the restriction in this case would pose a security risk. So, he resolved to cuff Fondren in the back with an extension, accomplished by using an extra set of cuffs.

Here, the defendants' stories diverge. Van Lanen claims that he contacted Peters in the HSU *before* cuffing Fondren to determine if using an extra handcuff behind Fondren's back would accommodate Fondren's medical need. He says that he received Peters' approval to cuff Fondren in this manner, and he directed other officers to do so. Peters, on the other hand, says that when she received the call, she "was advised that for safety and security reasons, including the assault on security staff officers, Fondren *had been placed in handcuffs behind his back.* Staff security *then contacted* the [HSU] to request an order for the continued use of cuffing from behind due to the concerns stated above." (Docket #63-3 at 1–2) (emphasis added). This dispute cannot be resolved on the current record.

Peters then revised Fondren's medical restriction from "cuff in front" to "cuff in back with extension." She did not physically examine him before making this change. Peters says that, taking into consideration both Fondren's medical needs and officer safety, she determined that cuffing in back was appropriate, so long as an extension was used. Peters claims to have examined Fondren several times before the November 21 incident and

says she was familiar with his medical condition. Fondren disputes this, claiming Peters had never physically examined him with respect to his shoulder, neck, or arm prior to that date. The record does not contain evidence of any examination by Peters prior to November 21. Fondren claims that when he put his hands behind him to be cuffed, he heard two cracking sounds in his shoulder and felt intense pain, and that his shoulder swelled up. He was then escorted to a control placement cell.

The next day, November 22, 2017, a nurse went to see Fondren regarding his shoulder pain; she examined him, ordered ice for his shoulder, and scheduled a follow-up appointment with Peters. One week later, on November 28, 2017, Peters saw Fondren to evaluate his shoulder but was unable to complete the physical examination because Fondren reported pain. Peters referred Fondren to physical therapy for further evaluation and treatment. Fondren underwent an x-ray which revealed no acute injuries, though Fondren points out that nerve damage and arthritis would not appear on an x-ray.

On December 15, 2017, Fondren had a physical therapy visit with Gil Haight ("Haight"), who made notes regarding Fondren's range of motion. Haight did not, in his written notes, order an elbow brace. Fondren claims Haight verbally recommended to Peters that Fondren wear a brace, but he produced no evidence of this. Peters did not get a brace for Fondren. Fondren saw Haight again on January 12, 2018; again, Haight did not order a brace, but again, Fondren says that he verbally recommended one. Between these two visits, on December 19, 2017, Peters reinstated Fondren's cuff-in-front restriction. She says she did so because Fondren had reported a decreased range of motion, and because it was her understanding that the

issues that caused him to be moved to the RHU had resolved. *See* (Docket #58-2 at 2).

Peters continued to see Fondren regularly for various medical needs. On February 6, 2018, Fondren saw Peters for left shoulder pain, along with other ailments. She discussed his treatment plan, and he pressed to be seen by a specialist. Peters noted that she would contact Haight and Fondren's former surgeon, which it appears she did. The next day, Peters, Haight, and another nurse met with Fondren to discuss his shoulder. During the visit, Fondren agreed to a plan of care that included him getting an electromyography ("EMG") test, which assesses the health of muscles and the nerve cells that control them. Fondren claims he asked Peters for a brace and she said she would look into it. On April 18, 2018, Fondren underwent an EMG, and the doctor who performed it did not recommend further treatment. Fondren was then transferred to a different institution, so his contacts with Peters ended.[2]

---

[2]After summary judgment briefing concluded, Fondren submitted a motion to supplement the record in which he provides information, in narrative form, about treatment he has received for his shoulder following the events of this case. (Docket #82). This proposed evidence was not presented in opposition to the defendants' summary judgment motions, so the Court will not consider it for the purposes of this Order. The motion to supplement will be denied. Assuming he can obtain admissible evidence to support his claims about his recent treatment, Fondren can use that evidence at trial if he believes it will help his case.

The Court will also deny an earlier discovery motion from Fondren in which he asked that certain witnesses be made available for depositions. (Docket #46). As the Court explained in its trial scheduling order, (Docket #33 at 2), discovery requests must be directed to the party from whom the discovery is sought; they are not to be filed with the Court.

## 4. ANALYSIS

The Eighth Amendment secures an inmate's right to be free from cruel and usual punishment. Prison officials violate that right if they exhibit deliberate indifference to an inmate's serious medical need. *Orlowski v. Milwaukee Cty.*, 872 F.3d 417, 422 (7th Cir. 2017). To succeed on a claim of deliberate indifference, a plaintiff must prove that "(1) [he] had an objectively serious medical condition; (2) the defendants knew of the condition and were deliberately indifferent to treating [him]; and (3) this indifference caused [him] some injury." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). Neither defendant contests the third element, so the Court will address only the first and second.

As to the first element of his claim, Fondren has put forward evidence that he had a serious medical condition—chronic nerve damage in his arm—for which doctors prescribed physical therapy and due to which the HSU had instituted a cuff-in-front restriction. Van Lanen does not contest this element, but Peters does. She argues that the orthopedic surgeon who had last treated Fondren's shoulder, in July 2017, indicated Fondren had a good range of motion, and he did not specifically order that Fondren's left arm use be restricted in any way. She also notes that Fondren continued with his prescribed physical therapy only through August, when he refused to undergo any more sessions. But it is undisputed that Fondren had been diagnosed with chronic nerve damage in his arm for which he had undergone medical procedures as recently as July 2017; it is undisputed the HSU had not removed Fondren's cuff-in-front restriction on the morning of November 21 when the incident at issue in this case occurred; it is undisputed that Fondren had, relatively recently, been prescribed ongoing care through physical therapy for his nerve issue; it is undisputed

that Fondren claims to have suffered intense pain and swelling when he was forced to be cuffed behind his back. On this record, a reasonable jury could find in Fondren's favor as to the seriousness of his condition.

With regard to the second element of Fondren's Eighth Amendment claim, he must show that the defendants acted with the requisite culpable state of mind. *Gayton*, 593 F.3d at 620. This entails a showing that the defendants had "subjective knowledge of the risk to the inmate's health" and the defendants "disregard[ed] that risk." *Id.* In other words, the defendants "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference. Even if a defendant recognizes the substantial risk, he is free from liability if he responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* Evidence that a defendant "acted negligently is insufficient to prove deliberate indifference." *Id.* Rather, "deliberate indifference is simply a synonym for intentional or reckless conduct, and that reckless describes conduct so dangerous that the deliberate nature of the defendant's actions can be inferred." *Id.* Material disputes of fact underlie the deliberate indifference element as to each defendant.

As to Van Lanen, the evidence construed in Fondren's favor demonstrates that he knew about Fondren's medical issue and cuffed him in the back anyway, without seeking advice from the HSU first. It is true that Van Lanen is entitled to rely on the advice of the prison's medical staff about inmates' medical conditions. *See McGee v. Adams*, 721 F.3d 474, 483 (7th Cir. 2013) (prison guards entitled to rely on medical staff determination to not exempt plaintiff from leg restraint requirement during transport). But if the timeline in Peters' declaration is believed, then Van Lanen lied about

the timing of his call to HSU; she says that he called her after having already cuffed and transported Fondren. The evidence also supports an inference that the security issue Van Lanen claims was the impetus for cuffing-in-back was over, or at least subdued, at the time of the cuffing. The liquid-throwing episode was done and Fondren had already submitted without incident to a strip search. If the jury believes Fondren's story, it could find that Van Lanen decided to cuff Fondren in back knowing it would cause him pain in order to punish him for being disruptive toward other officers.

As to Peters, the question is closer, but nonetheless the record could support a jury's finding that she was deliberately indifferent to Fondren's medical need by ordering a change to his cuffing restriction without actually examining him. Peters says that she took into consideration both Fondren's medical needs and officer safety when she determined that cuffing in back with an extension was appropriate. But she does not say which, if any, medical records she reviewed to make this decision. And if Fondren is believed, Peters had never physically examined his shoulder, neck, or arm prior to that date, and had no reason to know the status of his medical condition.

Peters also argues the claim against her must fail because there is no evidence that the change in Fondren's cuffing restriction caused him any pain or injury. *See Jackson v. Pollion*, 733 F.3d 786, 789–90 (7th Cir. 2013) ("[No matter how serious the condition, a plaintiff must show that the failure to treat the condition caused him injury or a serious risk of injury."). Instead, Fondren's injury, if any, was caused by the initial act of cuffing him from behind, which she says was done before she received the call from Van Lanen requesting that the restriction be changed for prospective purposes. This argument might have some force, but for the dispute of fact

about the timing of Van Lanen's call. If Van Lanen is believed, then Peters approved the cuffing that she admits caused the pain about which Fondren complains. The claim against Peters will move forward with respect to her decision to change Fondren's cuffing restriction.

The claim will not move forward with respect to Peters' subsequent care of Fondren's shoulder. Fondren claims that Peters should have ordered an elbow brace for him when he allegedly asked for one a year after the incident in this case. There is no evidence in the record that any medical provider ever recommended an elbow brace, or that it was necessary to treat any of Fondren's medical conditions, much less the one at issue in this case. Fondren also complains that Peters did not contact a specialist about his shoulder pain when he demanded such a referral in the year following the incident in this case. The evidence shows that Peters evaluated Fondren in February 2018 for his continued shoulder pain and, together with other providers, developed a treatment plan to which Fondren agreed. This evidence demonstrates not indifference but an overall concern for Fondren's wellbeing. Fondren's disagreement with Peters' proposed course of treatment is not sufficient to establish liability. *See Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) ("Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation.").

5. **QUALIFIED IMMUNITY**

The qualified immunity doctrine protects government officials from civil liability when they perform discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v.*

*Fitzgerald*, 457 U.S. 800, 818 (1982). Van Lanen has raised this defense, but he did so for the first time in his reply brief.[3] As Van Lanen must be aware, arguments raised for the first time on reply are waived. *See, e.g., Griffin v. Bell*, 694 F.3d 817, 822 (7th Cir. 2012). Invoking qualified immunity in a reply brief is particularly inappropriate because once the defense is raised, the burden shifts to the plaintiff to defeat it. *Weinmann v. McClone*, 787 F.3d 444, 450 (7th Cir. 2015). Waiting until the reply to raise the defense left Fondren with no opportunity to meet his burden to respond. Therefore, the Court finds that Van Lanen has waived the immunity defense for this stage of the proceedings. *See Narducci v. Moore,* 572 F.3d 313, 324 (7th Cir. 2009) (holding that the district court was entitled to find the defendants waived the qualified immunity defense in summary judgment proceedings because they failed to raise the issue before their reply brief).

6.  **CONCLUSION**

For the reasons stated above, Van Lanen's motion for summary judgment will be denied. Peters' motion will be granted in part and denied in part. The motion will be granted with respect to Fondren's complaints about Peters' treatment decisions after November 21, 2017. The motion will be denied with respect to Peters' November 21, 2017 decision to remove Fondren's cuff-in-front restriction. This case will proceed to trial on Eighth Amendment claims against Van Lanen, with respect to his behind-the-back cuffing on November 21, 2017, and against Peters, with respect to her decision to remove Fondren's cuff-in-front restriction. The Court will set a trial date by separate order.

---

[3]Peters did not raise the defense of qualified immunity.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion to have witnesses made available for depositions (Docket #46) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion to supplement the record (Docket #82) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Defendant Jay Van Lanen's motion for summary judgment (Docket #54) be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that Defendant Susan Peters' motion for summary judgment (Docket #60) be and the same is hereby **GRANTED in part and DENIED in part as reflected in this Order**.

Dated at Milwaukee, Wisconsin, this 10th day of March, 2020.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge